1



FILED _____ ENTERED
LODGED _____ RECEIVED

FEB 20 2003

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

( V 02-02184  #00000032

5

6           UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
7                      AT SEATTLE

8

9   JOEL HODGELL and ED KONEK,

10                        Plaintiffs,          No. C02-2184Z

11  v.
                                               ORDER
12  SAMSON DISTRIBUTING, INC., SDI,
    LEGALSTEROIDS.COM and SDI-
13  LABS.COM,

14                        Defendants.

15

16

17      This matter comes before the Court on plaintiffs' Hodgell and Konek's motion for

18  injunctive relief and sanctions, docket no. 15.

19                          **I. BACKGROUND**

20      This case arises out of plaintiffs' allegations pursuant to R.C.W. 19.190 (Commercial

21  Electronic Mail Act); R.C.W. 19.86 (Washington Consumer Protection Act); and common

22  law torts of trespass to chattels, harassment, and theft of services (R.C.W. 4.04.010).  On

23  December 17, 2002, plaintiffs moved for injunctive relief and sanctions.  See Plaintiffs'

24  Motion for Injunctive Relief and Sanctions, docket no. 15.  On December 27, 2002, this

25  Court granted Defendant's Motion for an Enlargement of Time on Plaintiffs' Motion for

26  Injunctive Relief and Sanctions.  On December 30, 2002, this Court denied Defendant's

ORDER  -1-

1  Motion to Dismiss for Lack of Personal Jurisdiction. See Minute Order, docket no. 23. The

2  Plaintiffs' Motion for Injunctive Relief and Sanctions is now before the Court.

3  **A.      The Plaintiffs**

4       Plaintiff Joel Hodgell is a Washington resident. Hodgell claims that the defendants

5  have sent 61 spams to his various emails addresses by using the third-party Internet domains

6  of "hotmail.com" and "msn.com." See Hodgell Decl., docket no. 17, at 3. In addition,

7  Hodgell claims that Dan Amato, President of defendant SDI, wrote him a threatening email

8  on October 3, 2001. Id. at 2, and at Ex. B. In November 2001, Hodgell notified defendants

9  of the ongoing spam, asked them to cease and desist, and provided some of his email

10  addresses to defendants. Id. at 2, and at Ex. C. Hodgell claims that he has repeatedly replied

11  to the "from" email addresses used by defendants in their spams. Id. at 2. The spams

12  promote defendant Samson's website that sells nutritional supplements. See Id. at Ex. D.

13  Hodgell claims he received 37 of the spams from defendants after they were told to cease and

14  desist. Id. at 6. In his January 16, 2003 declaration, Hodgell claims that he had received a

15  total of 64 spams from defendants, including 2 spams after he filed his motion for injunctive

16  relief. See Hodgell Decl., docket no. 27, at 2.

17       Plaintiff Ed Konek is a Washington resident. In his December 17, 2002 declaration,

18  Konek claimed that the defendants had sent him 6 spams since receiving his email addresses

19  in discovery. See Konek Decl., docket no. 16, at 2. In January 2002, Konek contacted

20  defendant SDI-Labs by telephone and spoke with a person who identified himself as Dan

21  Amato, and requested to be removed from his email database. Id. at 1-2. Konek has also

22  repeatedly contacted the defendants by replying to the "from" email addresses used by

23  defendants in their spams, to explain that he is a Washington resident, and that they are

24  violating Washington laws R.C.W. 19.190 (the Commercial Electronic Mail Act) and R.C.W.

25  19.86 (the Consumer Protection Act). Id. at 2. In his January 16, 2003 declaration, Konek

26  claimed that he had received over 41 spams from the defendants since January 2002. See

ORDER  -2-

1   Konek Decl., docket no. 28, at 2.  Konek received the most recent spam advertising

2   defendant SDI's "legal" steroids on January 13, 2003.  Id. at 3

3   **B.     The Defendants**

4          Defendant Samson Distributing, Inc. (SDI) is a Florida corporation with its principal

5   place of business in Lake Worth, Florida.  See Amato Decl., docket no. 25, at 1.  Amato is

6   President and owner of SDI.  Id.  Defendants SDI Legalsteroids.com, and SDI-Labs.com are

7   domain names owned by SDI, and the defendants may be collectively referred to as

8   "Samson."  See Defendant's Opposition to Plaintiffs' Motion for Injunctive Relief and

9   Sanctions, docket no. 24, at 1.  Samson is in the business of providing nutritional

10  supplements.  See Amato Decl., docket no. 25, at 1.

11         Samson promotes and sells its products via mass email advertisements.  Id. at 2.

12  Samson claims that its emails comply with applicable laws, "including that (1) the subject

13  line of the E-mail is not misleading, (2) the point of origin or transmission path of an E-mail

14  is not misrepresented or obscured, and (3) replying to the from address is sent to valid email

15  accounts."  Id. at 2.  Samson claims that it honors all 'unsubscribe' requests, and that the

16  recipient need only send an email with the word "remove" in the subject.  Id. at 3.

17                                **II.   DISCUSSION**

18         Plaintiffs seek the provisional remedies of injunctive relief and sanctions before a full

19  resolution of the parties' claims.  While state law applies to substantive issues in a diversity

20  action, federal law governs standards to issuing a preliminary injunction.  Instant Air Freight

21  Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 799 (3d Cir. 1989).  Even when causes of action

22  are state-created, Fed. R. Civ. P. 65(a) contemplates a "federal standard as governing

23  requests addressed to federal courts for preliminary injunctions." Id. at 799 (quoting Systems

24  Operations, Inc. v. Scientific Games Dev. Corp., 555 F.2d 1131, 1141 (3d Cir. 1977).  A

25  preliminary injunction is a provisional remedy that is only issued in extraordinary

26  circumstances, and the moving party bears the burden of establishing that the circumstances

ORDER  -3-

justify a preliminary injunction.  <u>Granny Goose Goods Inc. v. Teamsters</u>, 415 U.S. 423, 441 (1974).

A.      **Plaintiffs Fail to Satisfy the Federal Requirements for a Preliminary Injunction**

In the Ninth Circuit, preliminary injunctive relief is only available to a moving party who demonstrates either (1) a combination of the possibility of irreparable harm and probable success on the merits, or (2) that serious questions are raised and the balance of hardships tips in the movant's favor. <u>Sammartano v. First Judicial District Court</u>, 303 F.3d 959, 965 (9th Cir. 2002).  Plaintiffs fail to establish either the possibility of irreparable harm in the absence of a preliminary injunction, or probable success on the merits.  In addition, plaintiffs fail to establish that the balance of hardships tips in the movants' favor for a preliminary injunction.

**1. Irreparable Harm**

Plaintiffs fail to demonstrate that they would suffer irreparable harm if the requested preliminary injunction were not granted.  Irreparable harm is reserved for serious harms where monetary damages are insufficient, such as where failure to issue injunctive relief would result in an inability to exercise free speech or other Constitutional rights.  <u>See e.g.,</u> <u>Sammartano</u>, 303 F.3d at 965.  Plaintiffs' allegations that defendants' emails annoy and harass them falls short of demonstrating irreparable harm.  <u>See</u> <u>Denovellis v. Shalala</u>, 135 F.3d 58, 63-64 (1st Cir. 1998) (finding that mere psychological stress does not constitute irreparable harm warranting injunctive relief).

**2. Likelihood of Success on the Merits**

Plaintiffs have not demonstrated a likelihood of success on the merits, either with respect to plaintiffs' claim under R.C.W. 19.190 (the Washington Commercial Electronic Mail Act) or under R.C.W. 10.14 (the Washington Anti-Harassment Statute).

R.C.W. 19.190 only prohibits the transmission of certain types of unsolicited commercial email.  Violation of R.C.W. 19.190 requires that:(1) the sender know or have

ORDER  -4-

1 reason to know that the recipient is a Washington resident, and (2) the email must contain
2 false or misleading information in the subject line, the sender must use a third party's domain
3 name without permission, or the sender must misrepresent information in identifying the
4 point of origin or transmission path of a commercial email message. See R.C.W. 19.190.020.
5 Defendant Samson claims its emails comply with these requirements of R.C.W. 19.190.020.
6 See Amato Decl., docket no. 25, at 2; see also Defendants' Opposition to Plaintiffs' Motion
7 for Injunctive Relief and Sanctions, docket no. 24, at 8-9. Consequently, plaintiffs have not
8 established a likelihood of success on the merits with respect to R.C.W. 19.190.

9      Plaintiffs have also not demonstrated a likelihood of success on the merits under
10 R.C.W. 10.14. First of all, Fed. R. Civ. P. 8 requires that a pleading set forth a claim for
11 relief, including a short and plain statement of the grounds upon which the court's
12 jurisdiction depends. Plaintiffs' request for injunctive relief and sanctions under R.C.W.
13 10.14 is inappropriate relief to request by motion. Plaintiff's initial complaint has already
14 requested that the Court issue a permanent injunction enjoining and restraining defendants
15 from continuing or engaging in the "unlawful conduct" alleged in the Complaint. See Notice
16 of Removal, docket no. 1 (Complaint for Damages and Relief Under the Unfair Business
17 Practices–Consumer Protection Act and the Unsolicited Electronic Mail Act, at ¶ 7.6).
18 However, plaintiffs did not request relief under R.C.W. 10.14 in the initial complaint, and did
19 not amend their pleadings.

20      In addition, plaintiffs failed to comply with the personal service requirements of
21 R.C.W. 10.14.070. Although R.C.W. 10.14.070 allows the court to issue an ex parte order
22 for protection, the court only has personal jurisdiction absent personal service for such ex
23 parte orders if the petitioners "show reasonable proof of unlawful harassment" and that
24 "great or irreparable harm will result to the petitioner if the temporary anti-harassment
25 protection order is not granted." See R.C.W. 10.14.080(1). As discussed above, plaintiffs
26

ORDER  -5-

1   have not established that "great or irreparable harm" will result, so plaintiffs must comply
2   with the personal service requirements of R.C.W. 10.14.

3       Even if R.C.W. 10.14 was pled in the original complaint or an amended complaint,
4   and even if plaintiffs met its personal service requirements, plaintiffs fail to demonstrate a
5   likelihood of success on the merits under R.C.W. 10.14. The legislature adopted R.C.W.
6   10.14 because it found that "serious, personal harassment through repeated invasions of a
7   person's privacy by acts and words showing a pattern of harassment designed to coerce,
8   intimidate, or humiliate the victim is increasing." R.C.W. 10.14.010. Further, R.C.W.
9   10.14.020 requires "unlawful harassment" to "actually cause substantial emotional distress to
10  the petitioner." The elements of a cause of action for "unlawful harassment" are (1) a
11  knowing and willful (2) course of conduct (3) directed at a specific person (4) which
12  seriously alarms, annoys, or harasses such person, and (5) serves no legitimate or lawful
13  purpose. R.C.W. 10.14.020(1); see also Burchell v. Thibault, 874 P.2d 196 (1994).

14      Plaintiffs fail to establish the level of "irreparable harm" required by federal law for
15  preliminary injunctions. Plaintiffs also fail to establish the level of harm required to obtain
16  relief under R.C.W. 10.14. To obtain a protection order under R.C.W. 10.14, a plaintiff must
17  show that the conduct would "cause a reasonable person to suffer substantial emotional
18  distress...[and must] actually cause substantial emotional distress." Burchell v. Thibault, 74
19  Wash. App. 517, 522 (1994). Washington courts have applied the anti-harassment statute to
20  emotionally charged situations, such as those involving physical threats and assaults (see
21  e.g., Burchell, 74 Wash. App. at 522) and repeated violations of civil rights based on
22  malicious racial motivation (see e.g. Nafziger v. Nafziger, 69 Wash. App. 906, 910 (1993).
23  However, plaintiffs cite no authority for applying R.C.W. 10.14 to merely annoying receipt
24  of unsolicited emails. Therefore, plaintiffs fail to show the required level of harm to obtain
25  relief under R.C.W. 10.14.

26

ORDER  -6-

**B.    Plaintiffs' Request for Monetary Sanctions**

The plaintiffs also request an award of sanctions in the amount of $500 for each harassing email sent since July 2001.  See Plaintiff's Motion for Injunctive Relief and Sanctions, docket no. 15, at 1, 8.  R.C.W. 10.14 does not provide sanctions, other than for filing fees, court costs, and costs incurred in bringing the action.  See R.C.W. 10.14.090(2). In addition, R.C.W. 10.14 "is not intended to provide redress for past injury.  The purpose of the legislation is to facilitate the issuance of 'protection orders *preventing* all *further* unwanted contact between the victim and the perpetrator.' " Burchell v. Thibault, 74 Wash. App. 517, 522 (quoting R.C.W. 10.14.010) (emphasis in original).  Thus monetary sanctions for past harassment is not provided by the statute, and does not comport with the purpose of the statute.  Therefore the requested award of monetary sanctions under R.C.W. 10.14 for each harassing email is unavailable.

### III. CONCLUSION

For the foregoing reasons, the court DENIES plaintiffs' motion for injunctive relief and sanctions, docket no. 15.

IT IS SO ORDERED.

DATED this ___20th___ day of February, 2003.


THOMAS S. ZILLY
UNITED STATES DISTRICT JUDGE

ORDER  -7-